| | |
|---|---|
| 1 | BINGHAM MCCUTCHEN LLP |
|  | Scott Vick  (No. 171944) |
| 2 | The Water Garden |
|  | Fourth Floor, North Tower |
| 3 | 1620 26th Street |
|  | Santa Monica, California  90404-4060 |
| 4 | Telephone:  310.907.1000 |
|  | Facsimile:  310.907.2000 |
| 5 | scott.vick@bingham.com |
| 6 | BINGHAM MCCUTCHEN LLP |
|  | Adrienne L. Taclas  (No. 211232) |
| 7 | Three Embarcadero Center |
|  | San Francisco, California 94111-4067 |
| 8 | Telephone:  415.393.2000 |
|  | Facsimile:  415.393.2286 |
| 9 | adrienne.taclas@bingham.com |
| 10 | |
|  | Attorneys for Defendant |
| 11 | ARTHUR ANDERSEN LLP |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| | DAVID HILDES, Individually and as Trustee of THE DAVID AND KATHLEEN HILDES 1999 CHARITABLE REMAINDER UNITRUST DATED JUNE 25, 1999, | No. 08-CV0008-BEN (RBB) |
| | | **ARTHUR ANDERSEN LLP'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS II, III AND V OF PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Plaintiff, | |
| | v. | |
| | ARTHUR ANDERSEN LLP; THOMAS G. WATROUS, SR.; DOUGLAS S. POWANDA; and JOHN DOE as the Executor of the ESTATE OF DAVID A. FARLEY, | |
| | | Date:  March 3, 2008 |
| | | Time:  10:30 a.m. |
| | Defendants. | Courtroom:  3 |

---

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

   PLEASE TAKE NOTICE that defendant Arthur Andersen LLP ("Andersen") will and hereby does move this Court for an order dismissing all causes of action asserted against it in the Plaintiff's First Amended Complaint: (1) Count II (for purported violations of Section 11 of the Securities Act of 1933); (2) Count III (for purported violations of Section 10(b) of the Exchange Act of 1934); and (3) Count V (for purported violations of Section 14(a) of the Exchange Act of 1934).  This Motion shall be brought for hearing before the Honorable Roger T. Benitez, United States District Court, Southern District of California, Courtroom 3, on March 3, 2008 at 10:30 a.m.

   Andersen's Motion to Dismiss seeks dismissal of the Complaint against Andersen pursuant to Federal Rules of Civil Procedure 9(b) and 12 on the grounds that Counts II, III and V fail to plead claims with sufficient particularity and otherwise fail to state a cause of action on which relief can be granted.  This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice submitted concurrently herewith, the Declaration of Scott Vick and accompanying exhibits filed therewith, the argument of counsel, and on all the pleadings and papers of record in this matter.

DATED:  January 25, 2008                         BINGHAM McCUTCHEN LLP


                                                 By:   /s/  Scott Vick
                                                    Attorneys for Defendant
                                                    ARTHUR ANDERSEN LLP
                                                    E-mail: scott.vick@bingham.com

---

ARTHUR ANDERSEN LLP'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS II, III AND V
OF PLAINTIFF'S FIRST AMENDED COMPLAINT 08-CV0008-BEN (RBB)

TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. PROCEDURAL BACKGROUND ................................................................................. 2

III. PLAINTIFF'S SECTION 11 CLAIM (COUNT II) AND SECTION 14(A) CLAIM (COUNT V) SHOULD BE DISMISSED .......................................................... 3

    A. A Party Who Purchases Securities Prior To The Effective Date Of A Registration Statement Containing Alleged Misstatements Cannot State A Claim Under Section 11 ........................................................................................ 3

    B. Plaintiff Hildes' Section 11 Claim Must Be Dismissed Because He Purchased Shares Of Peregrine Before The Registration Statement Became Effective ............................................................................................... 6

        1. Plaintiff Hildes Executed A Voting Agreement Before Issuance Of The Registration Statement .............................................................. 6

        2. By Executing The Voting Agreement, Plaintiff Hildes Effectively Purchased Shares Of Peregrine Before The Issuance Of The Registration Statement ................................................................. 7

    C. Plaintiff's Purchase Of Peregrine Stock Before Issuance Of The Registration Statement Is Also Fatal To His Section 14(a) Claim ....................... 9

IV. PLAINTIFF'S SECTION 10(B) CLAIM (COUNT III) SHOULD BE DISMISSED ................................................................................................................... 10

    A. To State A Claim Under Section 10(b), Plaintiff Must State With Particularity Facts Giving Rise To A Strong Inference That Andersen Acted With Scienter .......................................................................................... 10

    B. This Court Has Twice Dismissed Section 10(b) Claims Against Andersen ........ 12

    C. Plaintiff's Complaint Is No Different From The Class Action Complaint And Should Be Dismissed For The Same Reasons ........................................... 13

V. CONCLUSION ............................................................................................................. 14

i

ARTHUR ANDERSEN LLP'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS II, III AND V
OF PLAINTIFF'S FIRST AMENDED COMPLAINT 08-CV0008-BEN (RBB)

TABLE OF AUTHORITIES

Page

**CASES**

*Amoroso v. Southwestern Drilling Multi-Rig Partnership No. 1*, 646 F. Supp. 141 (N.D. Cal. 1986) .................................................................................................... 7, 8

*APA Excelsior III L.P. v. Premiere Technologies, Inc.*, 476 F.3d 1261 (11th Cir. 2007) .................................................................................................. 4, 5, 8

*Barnes v. Osofsky*, 373 F.2d 269 (2d Cir. 1967) ........................................................... 5

*Desaigoudar v. Meyercord*, 223 F.3d 1020 (9th Cir. 2000) .......................................... 9

*Dominick v. Marcove*, 809 F. Supp. 805 (D. Col. 1992) .............................................. 9

*Dreiling v. American Exp. Co.,* 458 F.3d 942 (9th Cir. 2006) ...................................... 3

*DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002) ......... 10, 11

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ...................................... 9

*Gannon v. Continental Ins. Co.*, 920 F. Supp. 566 (D.N.J. 1996) ................................. 9

*Guenther v. Cooper Life Sciences, Inc.*, 759 F. Supp. 1437 (N.D. Cal. 1990) ............... 5

*Helman v. Murry's Steaks, Inc.*, 742 F. Supp. 860 (D. Del. 1990) ............................... 8

*In re Calpine Corp.*, 288 F. Supp. 2d 1054 (N.D. Cal. 2003) ....................................... 3

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) ........................... 10, 11

*In re Stac Elec. Sec. Litig.*, 89 F.3d 1399 (9th Cir. 1996) ............................................. 4

*Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1994) ............................................................. 4

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) ......................................... 3

*Lentell v. Merrill Lynch & Co. Inc.,* 396 F.3d 161 (2d Cir. 2005) ............................... 9

*Mullis v. United States Bankr. Court,* 828 F.2d 1385 (9th Cir. 1987) ......................... 3

*Pell v. Weinstein*, 759 F. Supp. 1107 (M.D. Pa. 1991) ................................................ 5, 7

*Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876 (2d Cir. 1972) ........................ 7, 8

*Reiger v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003 (S.D. Cal. 2000) ...... 11

*Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001) ........................................................ 10

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, -- S.Ct. --, No. 06-43, 2008 WL 123801 (U.S. Jan. 15, 2008) .................................................... 10

ii

ARTHUR ANDERSEN LLP'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS II, III AND V
OF PLAINTIFF'S FIRST AMENDED COMPLAINT 08-CV0008-BEN (RBB)

1

TABLE OF AUTHORITIES
(continued)

2                                                                                                                                    Page

3   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ......................................... 11

4   *Tricontinental Indus. Ltd. v. Anixter*, 184 F. Supp. 2d 786 (N.D. Ill. 2002).................................. 5

5   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ..................................................... 4

6   *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991)................................................. 9, 10

7
                                                    **STATUTES**
8
    15 U.S.C. § 77k(a) ................................................................................................................................4
9
    15 U.S.C. § 78u-4(b)(1) .................................................................................................................... 10
10
    15 U.S.C. § 78u-4(b)(2) .................................................................................................................... 10
11
    15 U.S.C. §78n(a) ............................................................................................................................... 9
12

13                                                    **RULES**

14  Fed. R. Civ. P. 12(b)(6)....................................................................................................................... 3

15  Fed. R. Civ. P. 9(b) ............................................................................................................................. 4

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This action was brought by a former member of the putative class in the related *In Re Peregrine Systems, Inc. Securities Litigation* ("*In Re Peregrine*") who chose to opt out of the settlement between defendant Arthur Andersen LLP ("Andersen") and the class, and bring his separate, almost identical lawsuit against Andersen in the United States District Court for the District of New Jersey (the "*Hildes*" action). The *Hildes* action has now been transferred back to this Court. Andersen hereby moves to dismiss Hildes' claims for relief against Andersen.

In *In Re Peregrine*, this Court twice considered and dismissed the Section 10(b) claims for relief brought against Andersen by the Lead Plaintiffs in the class action. Ignoring this Court's two prior rulings in *In Re Peregrine*, which carefully considered and dismissed the Section 10(b) claim against Andersen, Hildes nonetheless asserts the very same Section 10(b) claim against Andersen based on the same deficient allegations. For the same reasons those allegations failed in *In Re Peregrine* to state a Section 10(b) claim for relief against Andersen, they fail here. Hildes does not get a second bite at the pleading apple simply because he opted out of the Andersen settlement. Accordingly, Hildes' Section 10(b) claim against Andersen (Count III) should be dismissed with prejudice.

Hildes' Section 11 claim for relief against Andersen (Count II) is based on the allegation that Andersen made a misstatement in a Registration Statement issued in connection with the merger between Harbinger Corporation ("Harbinger") and Peregrine Systems, Inc. ("Peregrine"). Specifically, Hildes claims that Andersen's audit report on Peregrine's financial statements for the fiscal year ending March 31, 2000 -- which was incorporated into the Registration Statement -- was false, and that Hildes was damaged after he exchanged his Harbinger stock for Peregrine stock as part of the merger.

The problem is that judicially noticeable documents demonstrate that Hildes purchased his Peregrine stock on April 5, 2000 -- twenty days **_before_** Andersen issued its April 25, 2000 audit report (containing Andersen's supposedly false statement), and forty three days **_before_** Peregrine issued the May 22, 2000 Registration Statement. Having purchased Peregrine

stock *before* Andersen made any alleged misstatements to him and before issuance of the May 22, 2000 Registration Statement, as a matter of law Hildes could not have relied on Andersen's later made alleged misstatements, nor could Andersen's later made alleged misstatements have caused Hides' alleged loss. Accordingly, Hildes' Section 11 claim for relief (Count II) and his Section 14(a) claim for relief (Count V) should be dismissed with prejudice.

## II.     PROCEDURAL BACKGROUND

Plaintiff Hildes was a member of the class of plaintiffs represented by Lead Plaintiffs in the *In Re Peregrine* federal securities class action litigation.[1] By Stipulation and Agreement of Settlement dated June 5, 2006, class action plaintiffs and Andersen entered into a Settlement of the *In Re Peregrine* class action. In November 2006, this Court held a hearing to consider approval of the Settlement, and granted judgment dismissing the class action against Andersen. *See* Docket No. 762.[2] Plaintiff Hildes timely requested to be excluded from the Settlement between class action plaintiffs and Andersen. *See id.*, Exhibit 1 ("Excluded Andersen Settlement Class Members").

Plaintiff Hildes' claim against Andersen for purported violation of Section 10(b) is based on the same facts as pled in *In Re Peregrine*.[3] In November 2003, this Court dismissed securities fraud claims brought by Peregrine shareholders against Andersen under Sections 10(b) and 14(a). *See* Declaration of Scott Vick in Support of Arthur Andersen LLP's Motion to Dismiss Plaintiff's First Amended Complaint[4] ("Vick Decl."), Ex. E (Order of the United States

---

[1]    Plaintiff Hildes was represented by Lead Plaintiffs and was also part of what was termed "the Harbinger Sub-Class" -- all persons and entities who held shares in Harbinger, but later acquired Peregrine's stock when it merged with Harbinger.

[2]    All docket umbers refer to filings in the related *In Re Peregrine* class action, Case No. 02-CV0870-BEN (RBB).

[3]    Plaintiff's original complaint was filed in the United States District Court for the District of New Jersey on May 10, 2007. Upon joint motion, this action was transferred to the United Stated District Court for the Southern District of California, because of its factual and legal similarities to *In Re Peregrine*. The Court has already issued several rulings in *In Re Peregrine* that are directly relevant to this lawsuit.

[4]    "[F]acts subject to judicial notice may be considered on a motion to dismiss." *Mullis v.*
(Footnote Continued on Next Page.)

2

ARTHUR ANDERSEN LLP'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS II, III AND V
OF PLAINTIFF'S FIRST AMENDED COMPLAINT 08-CV0008-BEN (RBB)

District Court in *In Re Peregrine Systems, Inc. Securities Litigation*, filed November 21, 2003 ("First Order of Dismissal") at 73-77, 91-93).  In that Order, the Court found that the allegations against Andersen amounted to nothing more than "bald assertions" or purported wrongdoing that did not meet the rigorous pleading standards of the PSLRA.  *See id.*

In March 2005, this Court again dismissed securities fraud claims against Andersen brought under Section 10(b).  *See* Vick Decl., Ex. F (Order of the United States District Court in *In re Peregrine*, filed March 30, 2005 ("Second Order of Dismissal") at 109-119).  In the Second Order of Dismissal, the Court reiterated many of its previous findings, and held that the class action plaintiffs had again failed to plead sufficient facts to demonstrate scienter on the part of Andersen.  *See id.* at 119.

### III. PLAINTIFF'S SECTION 11 CLAIM (COUNT II) AND SECTION 14(a) CLAIM (COUNT V) SHOULD BE DISMISSED

Plaintiff Hildes purchased shares of Peregrine stock before Andersen made any alleged misstatement and before Peregrine issued the allegedly false and misleading Registration Statement and Joint Proxy.  Because it was legally *impossible* for Hildes to have relied on alleged misstatements in a registration statement and proxy that had not been issued at the time of his purchase, Hildes cannot assert claims for relief against Andersen under Section 11 of the Securities Act of 1933 (Count II) or Section 14(a) of the Securities Exchange Act of 1934 (Count V).  Accordingly, the Court should dismiss those claims with prejudice.

#### A. A PARTY WHO PURCHASES SECURITIES PRIOR TO THE EFFECTIVE DATE OF A REGISTRATION STATEMENT CONTAINING ALLEGED MISSTATEMENTS CANNOT STATE A CLAIM UNDER SECTION 11

Count II of the FAC asserts a claim against Anderson for violation of Section 11

---

(Footnote Continued from Previous Page.)

*United States Bankr. Court,* 828 F.2d 1385, 1388 (9th Cir. 1987).  Among the judicially noticeable documents that a court may consider on a motion to dismiss are those filed with the SEC.  *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *In re Calpine Corp.*, 288 F. Supp. 2d 1054, 1076 (N.D. Cal. 2003); *see also Dreiling v. American Exp. Co.,* 458 F.3d 942, 946 n.2 (9th Cir. 2006) ("We review de novo a dismissal under Rule 12(b)(6), and may consider documents referred to in the complaint or any matter subject to judicial notice, such as SEC filings.").

3

ARTHUR ANDERSEN LLP'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS II, III AND V
OF PLAINTIFF'S FIRST AMENDED COMPLAINT 08-CV0008-BEN (RBB)

1  of the Securities Act of 1933, 15 U.S.C. § 77k.  Section 11 imposes liability for false statements
2  or omissions of material fact in registration statements.  *See* 15 U.S.C. § 77k(a).  To state a claim
3  under Section 11, plaintiffs must allege: "(1) that the registration statement contained an
4  omission or misrepresentation, and (2) that the omission or misrepresentation was material, that
5  is, it would have mislead a reasonable investor about the nature of his or her investment."  *In re*
6  *Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1403-04 (9th Cir. 1996) (quoting *Kaplan v. Rose*, 49 F.3d
7  1363, 1371 (9th Cir. 1994)).  Where, as here, a Section 11 claim is "grounded in fraud," the
8  pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).  *See id*
9  at 1404-05*; see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).
10         The element of reliance is typically presumed for purposes Section 11 where the
11  purchase is made within twelve months *after* issuance of an allegedly defective registration
12  statement, but that presumption does not apply when the purchase is made *before* the issuance of
13  the registration statement.  *See* 15 U.S.C. § 77k(a) (reliance presumed until issuance of earnings
14  statement covering a period of at least twelve months *after* effective date of registration
15  statement).  Characterizing the issue as "one of first impression," the Eleventh Circuit Court of
16  Appeals, after an exhaustive review of legislative history and analogous authorities, held that
17  Section 11's presumption of reliance does not apply in situations where, as here, an insider
18  makes a legally binding commitment to purchase shares more than a month *before* the filing of a
19  defective registration statement.  *See APA Excelsior III L.P. v. Premiere Technologies, Inc.*
20  (*"APA Excelsior III"*), 476 F.3d 1261, 1267, 1277 (11th Cir. 2007).  A plaintiff cannot as a
21  matter of law rely on a registration statement that has not been issued.
22         The facts in *APA Excelsior III* are virtually on all fours with the facts in this case.
23  A company named Premiere Technologies, Inc. ("Premiere") acquired Xpedite Systems, Inc.
24  ("Xpedite") in a stock-for-stock merger.  Certain shareholders of Xpedite (the "Xpedite
25  Plaintiffs") brought suit against Premier, alleging that the registration statement Premiere had
26  issued in connection with the merger contained material misrepresentations regarding Premier's
27  financial condition and expected growth.  *See id.* at 1263-65.  Before the merger and issuance of
28  the registration statement, Premiere required all Xpedite Plaintiffs to execute stockholder

agreements. *See id.* at 1264-65. Under the stockholder agreements, the Xpedite Plaintiffs granted to Premiere irrevocable proxies to vote in favor of the merger. *See id.* The agreements were terminable only upon the termination of the merger agreement or at the effective date of the merger, whichever occurred first. After the stockholder agreements were executed, Premiere's registration statement for Xpedite became effective. A month later, a majority of both the Xpedite and Premiere shareholders voted to approve the merger and the merger was consummated. *See id.*

Referring at length to Section 11's legislative history, the Court concluded that, although reliance was presumed and, therefore, need not be proven in connection with a Section 11 claim, "[t]he concept of reliance was obviously important to Congress in drafting Section 11," and, therefore, was a component of such a claim. *See id.* at 1272. The Court held that Congress had not intended the presumption of reliance to apply where, as in this case, its application would be illogical. "To hold otherwise would mean that an impossible fact [would] be presumed in Plaintiffs' favor." *Id.* at 1273. ***"[W]hen there is a binding pre-registration commitment, the entire purpose of, and justification for, the presumption in the first place is non-existent." Id.*** (emphasis added). *See also Guenther v. Cooper Life Sciences, Inc.*, 759 F. Supp. 1437, 1441 (N.D. Cal. 1990) (dismissing Section 11 claims of plaintiffs who had purchased prior to the issuance of an allegedly defective amendment to the registration statement because such plaintiffs could not trace their purchase to stock that had been issued in connection with the amendment); *Pell v. Weinstein*, 759 F. Supp. 1107, 1115 (M.D. Pa. 1991), *aff'd* 961 F.2d 1568 (3d Cir. 1992) (dismissing claims under Sections 10(b) and 12 because plaintiffs committed to the transaction before the prospectus that contained the allegedly misleading statements was in existence); *Tricontinental Indus. Ltd. v. Anixter*, 184 F. Supp. 2d 786, 789-90 (N.D. Ill. 2002) (dismissing Section 11 claim where plaintiff received stock pursuant to a sale agreement before the registration statement was filed); *Barnes v. Osofsky*, 373 F.2d 269, 271 (2d Cir. 1967) (denying recovery under Section 11 where purchasers could not trace shares to allegedly incomplete prospectus).

In *APA Excelsior III*, the Court of Appeals ultimately held "that the Section 11

5

ARTHUR ANDERSEN LLP'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS II, III AND V
OF PLAINTIFF'S FIRST AMENDED COMPLAINT 08-CV0008-BEN (RBB)

presumption of reliance does not apply in the limited and narrow situation where sophisticated investors participating in an arms-length corporate merger make a legally binding investment commitment months before the filing of a defective registration statement." *Id*. at 1277. The presumption of reliance did not apply and actual reliance was impossible by virtue of the timing of the purchase vis-à-vis the alleged misstatement. The Court of Appeals, therefore, upheld the district court's granting of summary judgment in favor of the Defendants. *Id.*

### B. PLAINTIFF HILDES' SECTION 11 CLAIM MUST BE DISMISSED BECAUSE HE PURCHASED SHARES OF PEREGRINE BEFORE THE REGISTRATION STATEMENT BECAME EFFECTIVE

#### 1. Plaintiff Hildes Executed A Voting Agreement Before Issuance Of The Registration Statement

On April 5, 2000, Peregrine and Harbinger entered into a formal Merger Agreement (the "Merger Agreement" or "Agreement"), subject to approval by the shareholders of both companies. *See* FAC at ¶ 67. It is judicially noticeable that Hildes was an audit committee member, a director of Harbinger, and a major shareholder. *See* Vick Decl. Ex. A, Ex. C at 5-6 (stating that Hildes had been a director of the company since 1997 as well as a major shareholder). The April 5, 2000 Merger Agreement stated that Harbinger's Board of Directors unanimously approved the merger and had determined to recommend to Harbinger's shareholders that they approve the merger. *See* Vick Decl., Ex. A.

Also on April 5, 2000, Peregrine entered into Voting Agreements (the "Voting Agreement") with **Hildes** (and other inside Harbinger shareholders) whereby each shareholder granted Peregrine an irrevocable proxy to vote in favor of the merger with Peregrine. *See* Vick Decl., Ex. A at 3, Schedule B. Pursuant to the April 5, 2000 Voting Agreement, Hildes granted Peregrine a proxy to vote his shares which was "irrevocable to the fullest extent permissible by law . . . ." *See* Vick Decl., Ex. B at 2. Plaintiff Hildes' irrevocable proxy provided Peregrine "with full power of substitution and resubstitution, to vote and exercise all voting and related rights (to the full extent that the undersigned is entitled to do so) with respect to all of the shares of capital stock of [Harbinger] that now are or hereafter may be beneficially owned by the undersigned. . . ." *See id.* at 7. Hildes' April 5, 2000 Voting Agreement and Irrevocable Proxy

1  were terminable only upon the termination of the Merger Agreement or at the effective time of
2  the merger itself, whichever occurred first. *See id.*
3      On April 25, 2000, Andersen issued its audit report on Peregrine's financial
4  statements for the fiscal year ending March 31, 2000. *See* FAC at ¶ 26; Vick Decl., Ex. H at F-2.
5  On May 22, 2000, Peregrine filed a Registration Statement on Form S-4/A with the SEC (the
6  "Registration Statement"), which included a Joint Proxy Statement and Prospectus. *See* FAC at
7  ¶ 1; Vick Decl., Ex. H. The Registration Statement was issued in connection with the Merger
8  between Peregrine and Harbinger that was completed on or about June 16, 2000. *See id.* The
9  Registration Statement contained Peregrine's financial statements for its fiscal years ended
10 March 31, 1999 and March 31, 2000, and included Andersen's audit opinion on Peregrine's
11 financial results for fiscal year ending March 31, 2000. *See id.* at ¶¶ 3, 26. Hildes alleges that
12 Andersen's fiscal year 2000 audit opinion incorporated in the Registration Statement was false.
13 *See id.* at ¶¶ 26, 27.

14           **2.    By Executing the Voting Agreement, Plaintiff Hildes
                    Effectively Purchased Shares Of Peregrine *Before* The**
15                  **Issuance Of The Registration Statement**

16     Just like the plaintiffs in *APA Excelsior III*, Plaintiff Hildes made a legally
17 binding commitment to "purchase" shares of stock over one month before the Registration
18 Statement became effective. Pursuant to the April 5, 2000 Voting Agreement, Plaintiff granted
19 Peregrine a proxy to vote his shares in support of the merger which was "irrevocable to the
20 fullest extent permissible by law . . . ." Vick Decl., Exs. A & B at 2.
21     As of April 5, 2000, by executing the Voting Agreement, Hildes had irrevocably
22 committed himself to purchase Peregrine stock. *Pell*, 759 F. Supp. at 1114 (applying
23 commitment theory because "plaintiffs lacked the power or authority to back out of the merger").
24 The date of the "sale" of securities occurs when the parties become obligated to perform. *See*
25 *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 891 (2d Cir. 1972); *Amoroso v.*
26 *Southwestern Drilling Multi-Rig Partnership No. 1*, 646 F. Supp. 141, 143 (N.D. Cal. 1986)
27 (noting that *Radiation Dynamics* test applies in general under the federal securities laws). The
28 "commitment" to purchase a security is defined as "the point at which . . . there was a meeting of

7

1. the minds of the parties; it marks the point at which the parties obligated themselves to perform
2. what they had agreed to perform even if the formal performance of their agreement is to be after
3. a lapse of time." *See Radiation Dynamics*, 464 F.2d at 891; *Amoroso*, 646 F. Supp. at 143.
4.         Like the agreement in *APA Excelsior III,* Hildes' Voting Agreement was
5. terminable only upon termination of the Merger Agreement or at the effective time of the merger
6. itself, whichever occurred first. Hildes lacked the power or authority to back out of the Voting
7. Agreement at any time prior to the expiration date. By executing the April 5, 2000 Voting
8. Agreement and irrevocable proxy, Plaintiff irrevocably committed himself his investment
9. decision to vote in favor of the merger. *See id.; see also Helman v. Murry's Steaks, Inc.*, 742 F.
10. Supp. 860, 869-70 (D. Del. 1990) ("once the parties make the investment decision and enter into
11. a binding commitment to perform the transaction, the purchase and sale is complete").
12.         Here, as in *APA Excelsior III*, it would be illogical to cloak Plaintiff Hildes with a
13. presumption of reliance. Plaintiff made his investment decision and purchased shares of
14. Peregrine twenty days before Andersen issued its challenged audit opinion and over a month
15. before the Peregrine issued the challenged Registration Statement. The entire purpose of, and
16. justification for, the presumption of reliance under Section 11 is non-existent where there is a
17. binding commitment to purchase stock before a misrepresentation is made. As noted by the *APA*
18. *Excelsior III* court, "the presumption of reliance in Section 11 is specifically justified because,
19. even though the purchaser may not read and rely on the registration statement, the misstatements
20. and omissions contained therein are reasonably assumed to affect the market price and impel the
21. purchase . . . ." 476 F.3d at 1274 (citations omitted). The court found that while there is a
22. justification for the Section 11 presumption of reliance for a certain period after the security is
23. issued pursuant to a defective registration statement, there is not such a justification for it *before*
24. the fact, since "the investment decision and market price could not possibly have been affected . .
25. . by a registration statement that was not yet in existence." *Id.* at 1275.
26.         Since the allegedly defective Registration Statement did not exist at the time
27. Plaintiff Hildes made his investment decision, it is beyond dispute that his decision to vote his
28. shares was based on factors other than the contents of the Registration Statement. Because there

8

ARTHUR ANDERSEN LLP'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS II, III AND V
OF PLAINTIFF'S FIRST AMENDED COMPLAINT 08-CV0008-BEN (RBB)

1   is no presumption of reliance, and because it is impossible for Plaintiff to have actually relied on

2   the Registration Statement that issued over a month after he purchased Peregrine stock, Plaintiff

3   cannot maintain a claim against Andersen under Section 11.[5]

    **C.  PLAINTIFF'S PURCHASE OF PEREGRINE STOCK BEFORE ISSUANCE OF THE REGISTRATION STATEMENT IS ALSO FATAL TO HIS SECTION 14(a) CLAIM**

Plaintiff Hildes' pre-registration purchase of Peregrine shares is also fatal to his claim under Section 14(a) of the Exchange Act. Section 14(a) prohibits false or misleading statements in proxy solicitations. *See* 15 U.S.C. §78n(a). Causation is a necessary element of a Section 14(a) claim. *See, e.g., Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991) (holding that no "essential link" causation existed between an allegedly false or misleading proxy statement and the authorization of a merger where the votes sought by proxy were not necessary for the merger); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000) (holding that Section 14(a) plaintiff must demonstrate that misstatement was an "essential link in the accomplishment of the proposed transaction"); *Dominick v. Marcove*, 809 F. Supp. 805, 808 (D. Col. 1992) (holding that no "essential link" between proxy solicitation and asset sale where votes were not required to authorize asset sale); *Gannon v. Continental Ins. Co.*, 920 F. Supp. 566, 584 (D.N.J. 1996) (lack of causation was fatal to Section 14(a) claim).

As set forth in detail above, *supra* at III.B.1., Plaintiff Hildes purchased shares of

---

[5]    The concept of reliance is often referred to as "transaction causation" in cases involving the public securities markets. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). For the same reasons discussed above, *supra* at III.B., the Registration Statement's alleged misstatements could not have caused Plaintiff Hildes' loss as a matter of law because he made his investment decision *before* the Registration Statement was effective. As a result, Plaintiff Hildes cannot show transaction causation -- that is, that but for the alleged fraud, he would not have engaged in the purchase of Peregrine shares. *See Dura*, 544 U.S. at 341-42 (stating that 10(b) claim's "basic elements" include both transaction causation and loss causation). In *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 172 (2d Cir. 2005), the court stated: "[i]t is long settled that a securities-fraud plaintiff must prove both transaction and loss causation." (quotation omitted). Transaction causation requires allegations that "but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." *Id.* (quotation omitted). Because Hildes made his investment decision before the alleged misstatements were published in the registration statement, he cannot establish transaction causation as a matter of law.

Peregrine a month and a half before Peregrine's Registration Statement -- containing the alleged misstatements by Andersen -- was filed with the SEC. Plaintiff cannot demonstrate that the Registration Statement was an "essential link" that caused him to purchase shares of Peregrine, because he purchased Peregrine stock over a month *before* the Registration Statement even issued. Plaintiff has not and can not allege the requisite "link" between the alleged misstatements in the Registration Statement containing the proxy solicitation and his purchase of Peregrine securities. Consequently, he cannot bring a claim for violation of Section 14(a) because he cannot show that the defective Registration Statement caused him to purchase shares of Peregrine. *See, e.g., Virginia Bankshares,* 501 U.S. at 1102.

## IV. PLAINTIFF'S SECTION 10(b) CLAIM (COUNT III) SHOULD BE DISMISSED

Count III of the FAC asserts a claim against Andersen under Section 10(b) of the Exchange Act and SEC Rule 10b-5 ("Section 10(b)"). To state a claim against Andersen under Section 10(b), a plaintiff must plead: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, -- S.Ct. --, No. 06-43, 2008 WL 123801, *5 (U.S. Jan. 15, 2008) (citations omitted).

### A. TO STATE A CLAIM UNDER SECTION 10(B), PLAINTIFF MUST STATE WITH PARTICULARITY FACTS GIVING RISE TO A STRONG INFERENCE THAT ANDERSEN ACTED WITH SCIENTER

To survive a motion to dismiss, a Section 10(b) claim must pass a number of rigorous pleading tests that represent "an unusual deviation from the usually lenient requirements of federal rules pleading." *Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001). The PSLRA requires plaintiff to state with particularity each statement alleged to have been misleading and the reason the statement is misleading. 15 U.S.C. § 78u-4(b)(1). Plaintiff must further plead specific facts establishing a "strong inference" that each defendant acted with scienter, "the nefarious mental state necessary to constitute securities fraud." *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002); *see also In re Silicon Graphics Inc. Sec.*

10

1 *Litig.*, 183 F.3d 970, 979, 983 (9th Cir. 1999); 15 U.S.C. § 78u-4(b)(2). Plaintiff must allege "at

2 a minimum, particular facts giving rise to a strong inference of deliberate or conscious

3 recklessness." *In re Silicon Graphics*, 183 F.3d at 979; *see also DSAM*, 288 F.3d at 391.

4 Furthermore, when determining whether a strong inference arises from the facts alleged, courts

5 must consider all inferences, including those that favor the defendant. *See Tellabs, Inc. v. Makor*

6 *Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007) (holding that complaint will survive "only if

7 a reasonable person would deem the inference of scienter cogent and at least as compelling as

8 any opposing inference one could draw from the facts alleged").

9       In the related *In Re Peregrine* litigation, this Court held that to adequately allege

10 scienter, the Complaint must demonstrate that "Arthur Andersen's accounting practices were so

11 deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or

12 to investigate the doubtful, or that the accounting judgments which were made were such that no

13 reasonable accountant would have made the same decisions if confronted with the same facts."

14 Vick Decl., Ex. F at 110, (quoting *DSAM Global Value Fund*, 288 F.3d at 390). Further, "[t]he

15 complaint must allege facts to establish that [Arthur Andersen] knew or must have been aware of

16 the improper revenue recognition, intentionally or knowingly falsified the financial statements,

17 or that the audit was such 'an extreme departure' from reasonable accounting practice that

18 [Arthur Andersen] 'knew or had to have known' that its conclusions would mislead investors."

19 Vick Decl., Ex. F at 110 (citations omitted).

20       With respect to outside auditors, this Court has recognized that the requirements

21 of the PSLRA are especially difficult to meet:

22 > [T]he lack of a rational economic incentive for an independent
> accountant to participate in fraud, the client's central role in
23 > providing information to the accountant, and the complex
> professional judgment required to perform an audit, make it
24 > exceedingly difficult for a securities plaintiff to plead facts
> suggesting that an independent accountant acted with the deliberate
25 > state of mind now required to withstand a motion to dismiss.

26 Vick Decl., Ex. F at 111-12 (quoting *Reiger v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d

27 1003, 1008 (S.D. Cal. 2000), *aff'd sub nom., DSAM*, 288 F.3d 385). Plaintiff Hildes' Section

28

11

1   10(b) allegations against Andersen do not satisfy these stringent standards any more than the

2   Section 10(b) allegations from the class action complaints from which Hildes copied them.

   **B. THIS COURT HAS TWICE DISMISSED SECTION 10(b) CLAIMS AGAINST ANDERSEN**

   This Court has already carefully considered and twice rejected identical Section 10(b) claims against Andersen in the *In Re Peregrine* class action litigation. The *Hildes* matter is an opt-out action that relies on the same facts and allegations that have already been found deficient -- and twice dismissed -- in the class action. For the same reasons as there, Plaintiff Hildes' Section 10(b) claim against Andersen should be dismissed.

   In November 2003, the Honorable Napoleon Jones, Jr. dismissed Section 10(b) and 14(a) claims against Andersen in the related *In Re Peregrine* class action lawsuit. *See* Vick Decl., Ex. E ("First Order of Dismissal") at 73-77, 91-93). This Court found that the allegations against Andersen amounted to nothing more than "bald assertions" or purported wrongdoing that did not meet the rigorous pleading standards of the PSLRA. *See id.* Judge Jones, Jr. found that plaintiffs had "fail[ed] to provide the Court with any details or facts giving rise to a strong inference of scienter" under Section 10(b), and failed to provide sufficient facts to give rise to a strong inference of negligence under Section 14(a). *Id.* at 74:13-14, 91-93.

   On March 30, 2005, the Honorable Roger T. Benitez, in a 137-page opinion, carefully examined and again dismissed the Section 10(b) claim against Andersen in the *In Re Peregrine* class action. *See* Vick Decl., Ex. F ("Second Order of Dismissal") at 109-119. In the Second Order of Dismissal, the Court reiterated many of its previous findings, and held that the allegations against Andersen were "conclusory and insufficient to show scienter." *See id*. at 112, 119. It further stated that "[p]laintiffs have not alleged knowing or severely reckless publishing of materially false information by specific factual allegations." *Id.* at 112.

   In so ruling, this Court held that the requirements of the PSLRA for alleging scienter were not satisfied merely by: (1) allegations of violations of generally accepted accounting principles ("GAAP"), by Peregrine: (2) bare allegations that Andersen knew or was deliberately reckless in not knowing that Peregrine had material weaknesses in its internal

12

1 accounting control structure; (3) conclusory allegations that Andersen had violated generally
2 accepted accounting principles ("GAAS"); (4) allegations of Andersen's alleged motive to
3 maintain audit fees; (5) allegations of the magnitude of Peregrine's fraud; (6) conclusory
4 allegations that Andersen knew Peregrine had changed its revenue recognition policy; and (7)
5 allegations of Andersen's purported failure to detect the fraud. *See id.* at 112-16, 118-19.
6 Instead, this Court indicated that, to allege scienter, the PSLRA required detailed allegations of
7 facts showing that "the magnitude and obviousness of Peregrine's accounting errors was so
8 severe that Arthur Andersen's audit transcended mere negligence and represented either a
9 disregard of the obvious errors or a refusal to identify the fraud." *Id.* at 118.
10 This Court concluded as follows:

> In sum, Plaintiffs have failed to allege any facts to establish that Arthur Andersen . . . knew or must have been aware of the improper revenue recognition, intentionally or knowingly falsified the financial statements, or that the audit was such an extreme departure from reasonable accounting practice that it knew or had to have known that its conclusions would mislead investors.

*Id.* at 117-18.

### C. PLAINTIFF'S COMPLAINT IS NO DIFFERENT FROM THE CLASS ACTION COMPLAINT AND SHOULD BE DISMISSED FOR THE SAME REASONS

Plaintiff Hildes alleges generally that Andersen "knew" of the fraud at Peregrine, but does not set forth any specific details. Plaintiff's allegations are identical to those in the *In Re Peregrine* class action litigation -- a case in which Plaintiff Hildes was previously a represented class member. Indeed, the allegations in the class action litigation that were twice rejected by this Court contain *much more detail* regarding Andersen's purported knowledge than Plaintiff Hildes' FAC. *Compare* FAC at ¶¶ 26, 27, 63(k), 105, 106, 173; to Vick Decl., Ex. D at ¶¶ 397-483 (First Amended Consolidated Complaint for Violations of the Federal Securities Laws).

Like the allegations in the federal class action, Plaintiff Hildes' allegations consist of: (1) conclusory allegations that Peregrine's financial statements were not prepared in accordance with GAAP, and that its audits were not performed in accordance with GAAS; (2)

13

1  allegations that Andersen ignored warning signs at Peregrine; (3) allegations regarding

2  Andersen's purported motive to retain Peregrine as a client; (4) conclusory allegations that

3  Andersen knew Peregrine's accounting policy had changed to recognize revenue immediately

4  upon execution of software license agreements even though there was no firm commitment by an

5  end-user; (5) allegations that Andersen possessed information that revealed improper revenue

6  recognition; and (6) bald assertions that at some point in time, Andersen became aware of facts

7  that should have put it on notice of Peregrine's accounting irregularities.  *See* FAC at ¶¶ 26, 27,

8  36, 59, 63(k), 105, 106, 173; *see also* Vick Decl. Ex. G (Chart comparing First Amended

9  Consolidated Class Action Complaint and Plaintiff Hildes' FAC).  Hildes' FAC adds nothing

10  new.  Plaintiff's Section 10(b) claim suffers from the same fatal defects as the complaints in the

11  *In Re Peregrine* federal class action.  Plaintiff Hildes fails to allege facts that give rise to any

12  inference -- much less the required "strong inference" -- that Andersen, in conducting its audits

13  and reviews of Peregrine's financial statements, knew of Peregrine's fraud or acted with

14  deliberate recklessness approaching intent.  Consequently, Plaintiff's claim for violation of

15  Section 10(b) should be dismissed with prejudice.

16  **V.   CONCLUSION**

17  For the foregoing reasons, the Court should grant Andersen's motion and dismiss

18  Counts II, III and V of the First Amended Complaint with prejudice.

19

20  DATED:  January 25, 2008                BINGHAM McCUTCHEN LLP

21

22

23  By:  /s/  Scott Vick

24  Attorneys for Defendant
    ARTHUR ANDERSEN LLP
25  E-mail: scott.vick@bingham.com

26

27

28

14